**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CALIFORNIA FARM BUREAU FEDERATION, et al., </br></br>Plaintiffs,</br></br>v.</br></br>ANNE BADGLEY, in her official capacity as Regional Director of the United States Fish and Wildlife Service, Region 1, et al.,</br></br>Defendants,</br></br>and,</br></br>NATURAL RESOURCES DEFENSE COUNCIL, et al.,</br></br>Intervenor-Defendants. | Case No. 02-CV-02328 (RCL)</br></br>**FEDERAL DEFENDANTS' MOTION TO TRANSFER VENUE** |

COME NOW, Federal Defendants, by and through undersigned counsel, and hereby move the Court to transfer the above-captioned action to the United States District Court for the Eastern District of California, pursuant to 28 U.S.C. § 1404(a).

In support of this motion, Federal Defendants state as follows:

1. This action could have been brought in the Eastern District of California, where a substantial part of the events or omissions giving rise to plaintiffs' claims occurred.

2. There is pending litigation on the same claims in the Eastern District of California. Allowing both suits to go forward simultaneously will not serve the interests of justice because it will waste judicial resources and could result in inconsistent decisions and orders.

3. The interests of justice favor transfer to the Eastern District of California because the species, water resources, and plaintiffs at issue in this case are located within that district.

4. Plaintiffs would not be inconvenienced by a transfer because they either reside in the Eastern District of California or have significant interests in that district.

Further and additional support is contained in the accompanying Memorandum in

1

Support of Federal Defendants' Motion to Transfer Venue.

Pursuant to LCvR 7.1, counsel for Federal Defendants has conferred with counsel for plaintiffs regarding this motion. Plaintiffs' counsel has indicated that plaintiffs will oppose this motion.

                Respectfully submitted,

                Dated: November 8, 2004

                THOMAS L. SANSONETTI, Assistant Attorney General
                United States Department of Justice
                Environment and Natural Resources Division

                JEAN E. WILLIAMS, Chief
                SETH M. BARSKY, Assistant Chief

                    /s/ James A. Maysonett
                _____
                JAMES A. MAYSONETT, Trial Attorney (D.C. Bar 463856)
                United States Department of Justice
                Environment and Natural Resources Division
                Wildlife and Marine Resources Section
                Benjamin Franklin Station, P.O. Box 7369
                Washington, D.C. 20044-7369
                Telephone: (202) 305-0216
                Facsimile: (202) 305-0275

                Attorneys for Federal Defendants

OF COUNSEL:

JIM MONROE
United States Department of the Interior
Office of the Regional Solicitor
2800 Cottage Way, Room E-1712
Sacramento, CA 95825-1890

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CALIFORNIA FARM BUREAU FEDERATION, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>ANNE BADGLEY, in her official capacity as Regional Director of the United States Fish and Wildlife Service, Region 1, et al.,<br><br>    Defendants,<br><br>and,<br><br>NATURAL RESOURCES DEFENSE COUNCIL, et al.,<br><br>    Intervenor-Defendants. | Case No. 02-CV-02328 (RCL)<br><br>**FEDERAL DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE** |

## I. INTRODUCTION

The California Farm Bureau Federation and a California farmer are suing over a California fish and its alleged effects on certain California water projects. At the same time, two other California plaintiffs are pursuing nearly-identical claims in the Eastern District of California. To prevent the possibility of conflicting court orders, and to ensure that local issues are decided locally, this case should be transferred to the Eastern District of California.

## II. BACKGROUND

### A. Factual Background

The delta smelt (<u>Hypomesus transpacificus</u>) is a small fish whose primary habitat is the San Joaquin-Sacramento River Delta in California. The delta smelt was listed as a threatened species under the Endangered Species Act ("ESA") in 1993. 58 Fed. Reg. 12,854 (Mar. 5, 1993). This case arises because the waters of the San Joaquin-Sacramento River Delta (the "Delta"), in addition to being the habitat of the delta smelt, are also used to supply water to agricultural operations in California's Central Valley.

On November 22, 2002, plaintiffs filed a complaint in this Court instituting this action,

1

seeking declaratory and injunctive relief.  Plaintiff California Farm Bureau Federation, according to plaintiffs' own description, is "a non-governmental, non-profit, voluntary membership California corporation."  Compl. ¶ 5.  The California Farm Bureau's purpose, according to plaintiffs, is "to work for the protection of agriculture . . . throughout California."  Compl. ¶ 5.  Its members include over 20,000 members within California's Central Valley.  Compl. ¶ 5.  A substantial number of these members rely on water from the Federal Central Valley Project ("CVP") or the State Water Project, Compl. ¶ 5, which divert water from the Delta.  Plaintiff Sheely, according to plaintiffs, "owns and/or farms over 1,000 acres located in Kings and Fresno counties, California."  Compl. ¶ 6.

These plaintiffs allege that the delta smelt has recovered and should no longer be listed as a threatened species under the ESA.  Compl. ¶ 2.  They argue that they are harmed by this listing because they receive less water from the Delta for their agricultural purposes as the result of restrictions allegedly imposed to protect the delta smelt.  Compl. ¶¶ 5, 6.

More specifically, plaintiffs have raised a total of four causes of action under the ESA and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.  Plaintiffs' first claim was resolved by a stipulated settlement agreement.  In that claim, Plaintiffs alleged that the Federal Defendants had violated Section 4(c) of the ESA by failing to conduct a five-year review of the listing status of the delta smelt.  Compl. ¶¶ 26-33.  On April 25, 2003, the parties submitted a stipulated settlement agreement to the Court, which the Court entered on June 13, 2003.  Stipulated Settlement Agreement and Order Regarding Five-Year Review of Delta Smelt ("Stip. Settl. Agreement").

Under that agreement, the Service accepted a schedule for the completion of its five-year review of the delta smelt.  Stip. Settl. Agreement ¶ 1.  Plaintiffs agreed to dismiss their first claim with prejudice and to stay their remaining claims challenging the recovery criteria pending the completion of the five-year review.  Id. ¶ 2.  On March 31, 2004, the United States Fish and Wildlife Service (the "Service") completed its five-year review and concluded that the delta smelt should remain listed as "threatened" under the ESA.

In their second and third claims, Plaintiffs argue that the Service's recovery and delisting

2

criteria for the delta smelt are arbitrary and capricious.  Compl. ¶¶ 34-49.  Plaintiffs have also filed a supplemental complaint adding a fourth claim that challenges the results of the Service's five-year review.  First Supplemental Compl. ¶¶ 10-13.

On the same day that Plaintiffs filed their original complaint in this case, another set of plaintiffs filed a nearly identical case in the United States District Court for the Eastern District of California.  San Luis & Delta-Mendota Water Auth. v. United States Dep't of the Interior, No. 02-6461 (E.D. Cal.) (*filed* Nov. 22, 2002).  (A copy of the complaint in that action is attached hereto as Exhibit 1.)  The plaintiffs in that case are the San Luis & Delta-Mendota Water Authority, a California water authority, and the Westlands Water District, a California water district.  Ex. 1, ¶¶ 10, 11.

The plaintiffs in the California case raise claims that are essentially identical to the claims raised in this case.  In fact, plaintiffs in that case and Federal Defendants settled their first claim on terms that are the same as the Stipulated Settlement Agreement entered here.  The plaintiffs in the California case also intend to supplement their complaint to challenge the results of the Service's five-year review.

Finally, the citizen's suit provisions of the ESA require prospective plaintiffs to provide 60 days notice before they may sue.  ESA § 11(g)(2), 16 U.S.C. § 1540(g)(2).  Here, plaintiffs in the California case and plaintiffs in the case before this Court sent a single joint letter to the Federal Defendants, dated September 5, 2002, to satisfy that requirement.  The fact that the plaintiffs in these two cases were able to cooperate on that 60-day notice letter shows that they will also be able to work together to move this action forward if these cases are consolidated before the Eastern District of California.

**B.     Standard for Granting Motion to Transfer**

This Court has the authority to transfer this case under 28 U.S.C. § 1404(a).  Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

"The idea behind § 1404(a) is that where a 'civil action' to vindicate a wrong – however brought

3

in a court – presents issues . . . that make one District Court more convenient than another, the trial judge can, after findings, transfer the whole action to the more convenient court." Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 26 (1960).

Before granting a motion to transfer, the Court must determine whether the action could have been brought in the district to which the transfer is sought. Trout Unlimited v. United States Dep't of Agric., 944 F. Supp. 13, 16 (D.D.C. 1996) (citing Van Dusen v. Barrack, 376 U.S. 612, 616-17 (1964)). If that threshold requirement is met, the decision whether to transfer rests in the sound discretion of the district court.

That discretion should be exercised in light of all the circumstances of a case. See, e.g., Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257 (1981); Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 184-85 (1952); Trout Unlimited, 944 F. Supp. at 16 (noting that section 1404(a) vests "'discretion in the district court to adjudicate motions to transfer according to individualized, case-by-case consideration of convenience and fairness.'") (quoting Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)). The Court should consider the interests of justice, and the private and public interests. See, e.g., Hawksbill Sea Turtle v. FEMA, 939 F. Supp. 1, 3-5 (D.D.C. 1996).

In addition, the required showing for transfer is "substantially diminished where . . . transfer is sought to the forum where plaintiffs reside . . . and the connection between plaintiffs, the controversy, and the chosen forum is attenuated." Citizen Advocates for Responsible Expansion, Inc. v. Dole, 561 F. Supp. 1238, 1239 (D.D.C. 1983) (citations omitted). "Location of counsel carries little, if any, weight under § 1404(a) analysis." Ledyard v. United States, No. Civ. 95-0880-TAF, 1995 WL 908244, at *2 n.1 (D.D.C. May 31, 1995).

### III. ARGUMENT

#### A. This action could have been brought in the Eastern District of California.

The "threshold consideration" in determining the appropriateness of transfer under Section 1404(a) is whether the action "could have been brought" in the transferee district. See Van Dusen, 376 U.S. at 616 (noting that transfer power is expressly limited by the clause restricting transfer to those districts in which the action "might have been brought"). Thus, the

4

transferee district must have jurisdiction over the case.  Hoffman v. Blaski, 363 U.S. 335, 343 (1960).

Here, because plaintiffs have based their claims on federal question jurisdiction and the grant of jurisdiction under the ESA, Compl. ¶ 11, both this district and the Eastern District of California properly have jurisdiction over these claims.  As such, the relevant question is whether venue is proper in the transferee district.  Id.; see also Martin-Trigona v. Meister, 668 F. Supp. 1, 4 (D.D.C. 1987).

Pursuant to Section 1391(e), venue is proper in the judicial district where (1) "a defendant in the action resides," (2) "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated," or (3) the "plaintiff resides if no real property is involved in the action."  28 U.S.C. § 1391(e)(1) - (3).  Under these provisions, it is clear that "there may be more than one district in which a claim may be thought to have arisen and in which venue should be proper."  15 Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters § 3802.1 at 4, 6-7 n.9 (2d ed. 1989 & 2002 Supp.).

This case could have been brought in the Eastern District of California under at least two of these venue provisions.  Venue is proper under the third provision because plaintiff California Farm Bureau and at least 20,000 of its members, Compl. ¶ 5, are located within the Eastern District of California and because, while the Complaint does not state where plaintiff Sheely resides, it does state that plaintiff Sheely "owns and/or farms over 1,000 acres" within that district, Compl. ¶ 6.

Venue is also appropriate in the Eastern District of California under the second provision of Section 1391(e) because a substantial part of the events underlying plaintiffs' claims took place in California and within the Eastern District.  Much of the habitat of the delta smelt, including the San Joaquin-Sacramento River Delta, is located within the Eastern District of California.  Substantial elements of the federal government's Central Valley Project and the State of California's State Water Project, both of which draw water from the habitat of the delta smelt to distribute to plaintiffs, are located within the Eastern District of California.  The

5

agricultural operations that are allegedly affected by the listing of the delta smelt are located within the Eastern District of California.  Finally, the majority of the Fish and Wildlife Service staff that work on issues relating to the delta smelt are located within the Eastern District of California.  For all these reasons, a substantial part of the events underlying plaintiffs' claim took place in the Eastern District of California and venue is appropriate there.

Given the connection between the Eastern District of California and the events and natural resources at issue in this case, venue is proper in that district under Section 1391(e).  See Trout Unlimited, 944 F. Supp. at 16 (finding venue proper in the District of Colorado in a case concerning Colorado national forests); Northwest Forest Res. Council v. Babbitt, No. Civ. A-93-1579-JHG, 1994 WL 908586, at *2 (D.D.C. Apr. 13, 1994) (finding venue proper in the Western District of Washington for an ESA action involving West Coast marbled murrelet populations, in part because the challenged rule was promulgated with the assistance of government officials based in Washington State).  Since venue may be maintained in the forum to which transfer is sought, this threshold requirement is satisfied.

  **B. The interests of justice will be best served by transferring this case to the Eastern District of California.**

Most importantly, this case should be transferred to the Eastern District of California because that transfer will advance the interests of justice.  There is pending litigation in the Eastern District of California on the exact same issues that are raised in this case.  As the Supreme Court has explained, "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."  Continental Grain Co., 364 U.S. at 26.  The interests of justice strongly favor this transfer because it will prevent multiple lawsuits on a single issue and will allow related litigation to be tried together.  See Vencor Nursing Ctrs. v. Shalala, 63 F. Supp.2d 1, 6 (D.D.C. 1999); see also Hawksbill Sea Turtle, 939 F. Supp. at 3.  By doing so, this transfer will also conserve judicial resources.

Crucially, if these two cases are allowed to proceed simultaneously before two different courts, there is a real risk that the courts will enter contradictory decisions on the same issues.

The Federal Defendants could be subject to conflicting orders from both courts. Such a result would not further the interests of justice. Reiffin v. Microsoft Corp., 104 F. Supp.2d 48, 55 (D.D.C. 2000). The courts of this district "have clearly stated [that] '[t]he interests of justice are better served when a case is transferred to the district where related actions are pending.'" Reiffin, 104 F. Supp.2d at 56 (collecting cases).

In addition, the interests of justice are also promoted when a local controversy such as this one is resolved in the region that it affects. As the Supreme Court has noted:

> In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home.

Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947); see also Oil, Chemical & Atomic Workers v. NLRB, 694 F.2d 1289, 1300 (D.C. Cir. 1982) (directing courts to consider "whether the impact of the litigation is local to one region . . . ."); Airport Working Group, Inc. v. United States Dep't of Defense, 226 F. Supp.2d 227, 231 (D.D.C. 2002) (granting motion to transfer in part because, "[i]n contrast to the attenuated connection to the District of Columbia, the issues raised by this lawsuit are of great concern to the residents of Orange County"); Citizen Advocates for Responsible Expansion, 561 F. Supp. at 1240 (noting that justice requires that localized controversies be decided at home). Thus, this Court has held that "suits such as this one, which involve water rights, environmental regulation, and local wildlife – matters that are of great importance in [their State of origin] – should be resolved in the forum where the people 'whose rights and interests are in fact most vitally affected by the suit'" reside. Trout Unlimited, 944 F. Supp. at 19-20 (quoting Adams v. Bell, 711 F.2d 161, 167 n. 34 (D.C. Cir. 1983)).

This Court has applied this principle in a number of recent cases and transferred environmental claims to the forum where the alleged environmental impacts would occur. See, e.g., Seariver Maritime Fin. Holdings, Inc. v. Pena, 952 F. Supp. 9 (D.D.C. 1997) (transferring a challenge to a federal law barring the former Exxon Valdez from operating in Prince William Sound, Alaska, to the District of Alaska); Trout Unlimited, 944 F. Supp. at 20 (transferring a challenge to the United States Forest Service's granting of easements for the operation of a dam

7

in Colorado to the District of Colorado); Hawksbill Sea Turtle, 939 F. Supp. 1 (transferring an ESA challenge to a housing project in the Virgin Islands to the District Court of the Virgin Islands); Northwest Forest Resource Council, 1994 WL 908586, at *2 (transferring venue to the Western District of Washington for an ESA action involving West Coast marbled murrelet populations); Ledyard, 1995 WL 908244 (D.D.C. 1995) (transferring to a Connecticut district court an action challenging an Interior Department decision taking Connecticut land in trust on behalf of a Connecticut Native American tribe).

As discussed above, the plaintiffs, many of the defendants, and, importantly, the natural resources that are at issue in this case are all located within the Eastern District of California. In contrast, the only connection between this case and the District of Columbia is the fact that the Federal Defendants have offices here. Thus, because plaintiffs' claims are regional and specific to the Eastern District of California, they should be transferred there.

   **C. Public and private interests will also be served by the transfer of this case.**

Transferring this case to the Eastern District of California will also serve the public interest because that district is very familiar with issues relating to water rights in that part of California. Reiffin, 104 F. Supp.2d at 57 (noting that transfer is favored where transferee court has more substantive experience with issues presented than transferor court); Trout Unlimited, 944 F. Supp. at 16 (noting that, in evaluating a motion to transfer, a court should consider public interest factors including the transferee district's familiarity with the governing law). Thus, to the extent that this case raises issues concerning water rights in California's Central Valley, including the federal government's Central Valley Project, the Eastern District of California is currently hearing cases on those issues and is familiar with the governing law. See, e.g., San Luis & Delta-Mendota Water Auth. v. Badgley, No. Civ. F-99-5658 (E.D. Cal.) (including allegations concerning the listing of the Sacramento splittail under the ESA and the alleged effects of that listing on the operation of the CVP); San Luis & Delta-Mendota Water Auth. v. United States, No. Civ. F-00-7124 (E.D. Cal.) (including allegations concerning the effect of the implementation of the ESA on the operation of the CVP); San Luis & Delta-Mendota Water Auth. v. United States Dep't of Interior, No. CV-F-02-5209 (E.D. Cal.) (including allegations

that pumping operations related to the CVP have been altered for the benefit of the delta smelt). As the result of these and other cases, judges in the Eastern District of California will be familiar with facts relating to the operation of the CVP and the statutes and regulations governing those operations.

Little deference is due here to plaintiffs' choice of forum. The court need not defer to plaintiffs' choice of forum where (1) the plaintiffs' chosen forum has "no meaningful ties to the controversy and no particular interest in the parties or subject matter"; (2) "plaintiff[s'] choice . . . has no factual nexus to the case"; and (3) "transfer is sought to the forum with which plaintiffs have substantial ties and where the subject matter of the lawsuit is connected to that state." Trout Unlimited, 944 F. Supp. at 17 (internal quotations omitted); see also Airport Working Group, 226 F. Supp.2d at 229-230; Hawksbill Sea Turtle, 939 F. Supp. at 3; Citizen Advocates for Responsible Expansion, 561 F. Supp. at 1239; Armco Steel Co. v. CSX Corp., 790 F. Supp. 311, 323 (D.D.C. 1991) (deference to plaintiff's choice of forum is "greatly diminished" when the events have little connection to the chosen forum); Harris v. Republic Airlines, 699 F. Supp. 961, 963 (D.D.C. 1988) (deference overcome where plaintiff's choice of forum "has no factual nexus to the case . . . ."); Kafack v. Primerica Life Ins. Co., 934 F. Supp. 3, 6 (D.D.C. 1996) (holding that "deference is mitigated where the plaintiff's choice of forum 'has no meaningful ties to the controversy and no particular interest in the parties or subject matter.'") (citations omitted).

In Sierra Club v. Flowers, 276 F. Supp.2d 62 (D.D.C. 2003), for example, the Sierra Club argued that venue was proper in the District of Columbia because "defendants are federal officials located in [D.C.]" and "plaintiffs are national environmental organizations with offices in [D.C.]." Id. at 67. This Court, however, rejected the Sierra Club's argument that their choice of forum should be entitled to deference, finding that "the plaintiffs' choice of forum merits little deference," id. at 67, which aided the Court in granting the defendants' motion to transfer the case to the Southern District of Florida. Id. at 72-73; see also Pyrocap Int'l Corp. v. Ford Motor Co., 259 F. Supp.2d 92, 95 (D.D.C. 2003) (stating that "'substantially less deference is warranted when the forum preferred by the plaintiff is not his home forum . . . .'") (quoting Gemological

9

Inst. of Am. v. Thi-Dai Phan, 145 F. Supp.2d 68, 71 (D.D.C. 2001)); DeLoach v. Phillip Morris Cos., 132 F. Supp.2d 22, 24 (D.D.C. 2000) (finding that "numerous cases in this Circuit recognize that such a choice receives substantially less deference where the plaintiffs, as here, neither reside in, nor have any substantial connection to, that forum.").

Here, neither plaintiffs nor this controversy have any significant connection with the District of Columbia. The delta smelt is located in California. The water rights that plaintiffs claim are affected by the listing of the delta smelt are in California. The plaintiffs are in California. Most of the government officials and scientists involved with decisions related to delta smelt are in California. The only "nexus" between the District of Columbia and this case is the fact that these federal agencies maintain offices in the District. Thus, Federal Defendants are in fact seeking to transfer this case to the "forum with which plaintiffs have substantial ties and where the subject matter of the lawsuit is connected to that state." See Trout Unlimited, 944 F. Supp. at 17 (citation omitted). As a result, whatever limited deference is owed to plaintiffs' choice of forum is overcome by the interests of justice discussed above.

**IV.  CONCLUSION**

All of the factors relevant to the consideration of transfer under 28 U.S.C. § 1404(a) support the transfer of this action to the Eastern District of California. This action could have been brought in the Eastern District of California. Further, the interests of justice strongly favor transfer. For all of the reasons set out above, this case should be transferred to the Eastern District of California.

Respectfully submitted,

Dated: November 8, 2004

THOMAS L. SANSONETTI, Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

JEAN E. WILLIAMS, Chief
SETH M. BARSKY, Assistant Chief

/s/ James A. Maysonett
_____
JAMES A. MAYSONETT, Trial Attorney (D.C. Bar 463856)
United States Department of Justice

        Environment and Natural Resources Division
        Wildlife and Marine Resources Section
        Benjamin Franklin Station, P.O. Box 7369
        Washington, D.C. 20044-7369
        Telephone: (202) 305-0216
        Facsimile: (202) 305-0275

        Attorneys for Federal Defendants

OF COUNSEL:

JIM MONROE
United States Department of the Interior
Office of the Regional Solicitor
2800 Cottage Way, Room E-1712
Sacramento, CA 95825-1890